UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

**FILED**

JUL 1 4 2015

CLERK, US DISTRICT COURT, WDNY

CHRISTINE MARIE PORTER,

Plaintiff,

-vs-

13-CV-132-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

Defendant.

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF, ESQ., and JUSTIN M. GOLDSTEIN, ESQ., of Counsel), Amherst, New York, for Plaintiff for Plaintiff

WILLIAM J. HOCHUL, JR., United States Attorney (MARY K. ROACH, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated April 23, 2015 (Item 25).

Plaintiff Christine Marie Porter initiated this action on February 7, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security

---

[1]At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and was properly named in the complaint as the defendant under 42 U.S.C § 405(g). On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure. For continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (see Items 12, 20).  For the reasons that follow, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on July 4, 1978 (Tr. 18, 152).[2]  She filed applications for SSDI and SSI benefits on June 17 and September 14, 2010, respectively, alleging disability due to mental problems, carpal tunnel syndrome, and substance abuse, with an onset date of March 27, 2010 (Tr. 152-57).  The applications were denied administratively on November 10, 2010 (Tr. 92-107).  Plaintiff requested a hearing, which was held by videoconference on September 2, 2011, before Administrative Law Judge ("ALJ") Jennifer Whang (Tr. 10-43).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Vocational expert ("VE") James Newton also appeared and testified.

On October 12, 2011, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 53-66).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (see 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (identified as bilateral carpal tunnel syndrome, depressive disorder with anger, and obesity), while "severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at

---

[2]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 58-60).  The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence, opinions from medical sources, and plaintiff's testimony and written statements about her symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform work at the "light"[3] exertional level, with additional exertional and non-exertional limitations (Tr. 60-64). Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC would be able to perform the physical and mental demands of plaintiff's past relevant work as a housekeeping cleaner, and alternatively, would be capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and using Rule 202.20 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids") as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 64-66).

The ALJ's decision became the final decision of the Commissioner on December 13, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

---

[3]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ improperly assessed plaintiff's RFC and credibility, and improperly relied on the VE's testimony. *See* Items 12-1, 22. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 20-1.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record,

-4-

read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).   Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational

probative force, [the court] will not substitute [its] judgment for that of the Commissioner."
*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial
evidence in the record weighing against the Commissioner's findings, the determination will
not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*,
2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d
1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was
substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to
resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant."
*Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf.*
*Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the
medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the
court "must show special deference" to credibility determinations made by the ALJ, "who
had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight*
*Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.    Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must
present proof sufficient to show that she suffers from a medically determinable physical or
mental impairment "which can be expected to result in death or which has lasted or can be
expected to last for a continuous period of not less than 12 months ...," 42 U.S.C.
§ 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work
but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities ...." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), ... [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status ...." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.   The ALJ's Disability Determination

In this case, ALJ Whang determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since March 27, 2010, the alleged onset date (Tr. 58). At step two, the ALJ determined that plaintiff's mental and physical impairments are "severe" as that term is defined in the regulations because they "cause more than minimal functional limitations in the [plaintiff]'s ability to perform some basic work activities" (*id.*).

At step three, the ALJ determined that plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of any impairment in the Listings.  With regard to plaintiff's mental impairments, the ALJ considered the criteria for Listings 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders).  To satisfy the criteria of any of these Listings, the claimant must show (among other things) that his or her mental impairment resulted in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B)  (Paragraph "B" criteria).[4]  A claimant can also meet the requirements of these Listings by establishing the presence of "Paragraph C" criteria, *see*  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(C), 12.06(C). Based on plaintiff's hearing testimony and written statements, and relying on the findings of agency review psychologist Allan Hochberg, Psy.D., as set forth in a Psychiatric Review Technique form ("PRTF") dated October 28, 2010 (Tr. 516-28), the ALJ determined that plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence or pace; and had experienced no episodes of decompensation which had been of extended duration (Tr. 59-60).  The ALJ also found no evidence to establish the presence of "Paragraph C" criteria (*id.*).

---

[4]Substance abuse disorders involving depressive syndrome and/or anxiety related disorders are evaluated under the criteria of Listings 12.04 and/or 12.06, respectively.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09.

With regard to plaintiff's physical impairments, the ALJ discussed the objective medical evidence and hearing testimony indicating that plaintiff has received no physical therapy or other treatment for her carpal tunnel problems subsequent to successful release surgery on her right hand in August 2010 (Tr. 62). The ALJ also referred to the report and opinion of Dr. Karl Eurenius, M.D., who performed a consultative orthopedic examination on October 18, 2010, and found that plaintiff's bilateral carpal tunnel syndrome caused her to be "mildly limited in reaching or handling objects" and "moderately limited in carrying heavy objects" (Tr. 469).

The ALJ then determined that plaintiff had the RFC for light work, with the following limitations: she can do frequent, but not constant, pushing, pulling, handling and fingering with the bilateral upper extremities; she is limited to simple routine and repetitive tasks; she requires a low stress job, defined as having only occasional decision making and occasional changes in work setting; and she should work in isolation with only occasional supervision (Tr. 60). In making this finding, the ALJ discussed the medical evidence in the record, along with plaintiff's hearing testimony regarding her past work experience, activities of daily living, and the functional limitations caused by the symptoms of her impairments (Tr. 61). The ALJ gave "little weight" to the opinion of plaintiff's treating physician Dinesh Nanavati, M.D., set forth on a "Mental Residual Functional Capacity Questionnaire" form dated July 14, 2010, indicating that plaintiff was unable to engage in full-time competitive employment on a sustained basis (Tr. 62, 253-56). The ALJ gave "great weight" to the opinions of Drs. Hochberg and Eurenius, as well as to the opinion of Thomas Zastowny, Ph.D., who performed a consultative psychiatric evaluation on October 18, 2010, and determined that plaintiff could follow simple directions and perform simple

tasks; she could perform more complex tasks with supervision; her concentration and attention appeared to be "mildly to somewhat impaired;" her judgment, decision making, and ability to handle stress were limited; and her anger "appears to be one of her primary coping skills" (Tr. 466-67).

Based upon her consideration of this evidence, and relying upon the testimony of the vocational expert regarding the physical and mental demands of plaintiff's past relevant work, the ALJ found at step four of the sequential evaluation that plaintiff was capable of performing her past relevant work as a housekeeping cleaner as that job was actually performed.  The ALJ also relied on the vocational expert's testimony for the alternative finding at step five that, considering plaintiff's age, education, work experience and RFC, there were other jobs existing in substantial numbers in the national economy that plaintiff could perform (Tr. 64-65).  Finally, using Rule 202.20 of the Grids as a framework for decisionmaking, the ALJ determined that plaintiff was "not disabled" within the meaning of the Act at any time during the relevant period (Tr. 65-66).

## IV.    Plaintiff's Motion

### A.    RFC

Plaintiff contends that the Commissioner's determination should be reversed because the ALJ's RFC assessment was based on an improper application of the rules set forth in the regulations for determining the weight to be given to the medical opinion of the claimant's treating physician.  As explained in numerous Second Circuit opinions, the Social Security regulations "recognize a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."

*Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Rather, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect the consideration of various factors, including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted). The notice of determination must "always

-12-

give good reasons" for the weight given to a treating source's opinion, 20 C.F.R.
§ 416.927(c)(2), and the ALJ "cannot arbitrarily substitute h[er] own judgment for
competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d
795, 799 (2d Cir. 1983), *quoted in Rosa*, 168 F.3d at 79; *see also Schaal v. Apfel*, 134 F.3d
496, 503–04 (2d Cir.1998) (stating that the Commissioner must provide a claimant with
"good reasons" for the lack of weight attributed to a treating physician's opinion); *Halloran*,
362 F.3d at 32–33 ("This requirement greatly assists our review of the Commissioner's
decision and 'let[s] claimants understand the disposition of their cases.' ") (quoting *Snell*,
177 F.3d at 134).

In this case, ALJ Whang explained that Dr. Nanavati's opinion as to plaintiff's
inability to engage in full-time employment, as indicated on the Mental RFC Questionnaire
form, was entitled to little weight because of his limited knowledge of the nature of plaintiff's
mental impairment, as indicated by Unity Mental Health Clinic records revealing a
treatment relationship described by the ALJ as "tenuous, at best" (Tr. 62-63).  The ALJ
referred to Dr. Nanavati's notation on the form which indicates that his knowledge was
based on his contact with plaintiff at the clinic every three months, which the clinic
treatment records show consisted mainly of adjustment or renewal of plaintiff's
pyschotropic prescriptions with occasional follow-up of regular therapy and treatment
provided by a licensed clinical social worker, Nancy Stitzel, and a registered nurse, Lauren
O'Meal (Tr. 62).  The ALJ also noted the inconsistency of Dr. Nanavati's "seriously limited"
findings regarding several areas of mental abilities and aptitudes necessary for unskilled
work with his assessment of plaintiff's Global Assessment of Functioning ("GAF") at 58

-13-

(indicating "moderate" symptoms),[5] as well as with the overall "moderate" nature of her impairments as reflected in the treatment record compiled by clinic staff (*see* Tr. 62-63).

The ALJ further explained the substantial weight she gave to the opinions of Dr. Zastowny, the state mental consultative examiner, and Dr. Hochberg, the state consultative reviewer, which indicated that plaintiff's impairments caused no more than moderate limitations in a range of mental performance categories. According to the ALJ, and as indicated by this court's review of the medical evidence of record, these consultative findings are consistent with the overall level of functional limitation reflected in the mental health treatment notes from Unity Mental Health Clinic staff (*see, e.g.,* Tr. 259-78; 298-336), and were given full consideration in the ALJ's assessment of plaintiff's RFC limiting her to simple routine and repetitive tasks, and working in isolation with only occasional supervision in order to minimize stress-producing conditions and anger-triggering disruptions (*see* Tr. 63-64).

Plaintiff also contends that the ALJ completely ignored or otherwise failed to properly consider the findings and opinions of Ms. Stitzel, the licensed clinical social worker who saw plaintiff on a regular basis at Unity Mental Health Clinic, under the regulations and rulings directing the ALJ to evaluate the opinions of "other sources" regarding the nature of plaintiff's mental impairments using essentially the same factors as are used to evaluate

--------------------------------------------------

[5]GAF is a scale from 0 to 100 that may be used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning. A GAF score of 51–60 indicates a person with moderate symptoms or moderate difficulty in social, occupational or school functioning. A GAF score of 61–70 indicates a person with some mild symptoms or some difficulty in social, occupational, or school functioning, but who is generally functioning pretty well and has some meaningful interpersonal relationships. A GAF score of 71–80 indicates no more than a slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

the opinions of "acceptable medical sources" set forth in 20 C.F.R. §§ 404.1527 and 416.927. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d); Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). Plaintiff specifically refers to Ms. Stitzel's August 25, 2010 "Psychological Assessment for Determination of Employment Eligibility" form on which she indicated that plaintiff should be limited to 10 hours of work activity per week (*see* Tr. 619-21). However, as indicated above, the ALJ fully considered the Unity Mental Health Clinic records–including Ms. Stitzel's assessment form (*see* Tr. 56)–in determining the appropriate weight to be accorded to the medical source opinion evidence, and sufficiently articulated the reasons for that weight. In the court's view, this demonstrates adequate compliance with the regulations and rulings governing the ALJ's consideration of opinion evidence from treating sources who are not "acceptable medical sources."

Based on this review, and upon consideration of the record as a whole, the court finds that the ALJ's RFC assessment in this case was accomplished in accordance with the requirements of the regulations, administrative rulings, and case law regarding the weight to be accorded to the opinions of medical sources in a manner sufficient to allow plaintiff and the court to follow her reasoning, and is supported by substantial evidence. Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ improperly assessed plaintiff's RFC.

## B.   Credibility

Plaintiff also contends that the ALJ failed to properly assess plaintiff's credibility with respect to her testimony and statements about the limiting effects of her mental

-15-

impairment. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 416.929(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010). The Commissioner's policy interpretation ruling on this process provides the following further guidance:

The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, the court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with this guidance. The ALJ conducted a thorough examination of the treatment records, treating source opinions, and other medical evidence in finding that plaintiff's mental and physical impairments could reasonably be expected to cause the symptoms complained of, but that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment (Tr. 61). The ALJ noted plaintiff's testimony regarding her activities of daily living, including doing her own cooking and cleaning and otherwise maintaining her own apartment, and visiting her parents and helping them with chores. Her testimony and written statements of record also indicate a further range of daily activities, including visiting her boyfriends; taking care of pets; mowing the lawn and doing other yard work; doing laundry; driving; riding a bicycle; using public transportation; and helping to care for her nephew (see Tr. 24, 30, 186-88, 188, 262, 269, 464, 573). The ALJ also referred to clinic notes chronicling plaintiff's reports of "a moderate degree of social interaction … which

indicate that her symptoms, while severe, are not disabling to the degree she asserts in her testimony and self-reported statements" (Tr. 64).

In the court's view, the ALJ's credibility finding is sufficiently grounded in the evidence and specific enough to make clear to plaintiff, to this court, and to any subsequent reviewers the weight the ALJ gave to plaintiff's statements about the limiting effects of her symptoms, and the reasons for that weight. As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security regulations and rulings, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

### C.   VE's Testimony

Finally, plaintiff contends that the ALJ improperly relied upon the VE's testimony in determining that there were jobs existing in the economy that plaintiff could perform, because the hypothetical question posed by the ALJ to the expert was incomplete and presented an inaccurate portrayal of plaintiff's functional limitations. However, the court's review of the hearing testimony reveals that the ALJ posed a hypothetical[6] entirely consistent with the ALJ's RFC assessment which, as discussed above, was accomplished

---

[6]The ALJ posed the following hypothetical:

Now, assume that we have a hypothetical claimant of the claimant's age, education and experience. This hypothetical claimant is limited to light work and has the following additional limitations: can do frequent, but not constant push/pull handle finger [sic] with the bilateral upper extremities, is limited to simple, routine, repetitive tasks, requires a low stress job defined as having only occasional decision making and occasional changes in the work setting, and should have work that is isolated with only occasional supervision.

(Tr. 37).

in accordance with the requirements of the regulations, administrative rulings, and case law, and is supported by substantial evidence.

Accordingly, plaintiff is not entitled to remand on the basis of improper reliance on the VE's testimony.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld. Accordingly, plaintiff's motion for judgment on the pleadings (Item 12) is denied, the government's motion for judgment on the pleadings (Item 20) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

JOHN T. CURTIN
United States District Judge

Dated:                    , 2015
p:\pending\2013\13-132.ssdi.ssi.july1.2015

-19-